IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| William Lyn Wolfe, | ) | |
| | ) | Civil Action No. 8:08-869-PMD-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Sgt. Cooper; Lt. J. Goodman; Sgt. Lloyd; | ) | |
| Officer Braikford, aka Brailsford; | ) | |
| Warden A.J. Padula; Jon | ) | |
| Ozmint; Sgt. Gibbs; Bruce | ) | |
| Oberman; and Investigator | ) | |
| Greer, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, a prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United

States Code, Section 1983. This matter is before the Court on the defendants' motion for

summary judgment. (Dkt. # 109.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B),

and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all

pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit

findings and recommendations to the District Court.

The plaintiff brought this action on March 11, 2008, seeking damages for alleged

civil rights violations.[1]  On December 9, 2008, the defendants filed a motion for summary

---

[1]This date reflects that the petition was date stamped as received on March 11, 2008,
at the prison mailroom.  (Pet. Attach. # 2.)  *Houston v. Lack*, 487 U.S. 266 (1988)(holding
prisoner's pleading is considered filed when filed with prison for forwarding to district court).

judgment.   Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on December 10, 2008, the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.   On December 15, 2008, the plaintiff filed a response opposing the defendants' summary judgment motion.   Then, on December 17, 2008, the plaintiff filed another response opposing the defendants' summary judgment motion.

## I.  FACTS PRESENTED

The plaintiff is a former prisoner who was incarcerated at the Lee Correctional Institution ("LCI") at the time of the allegations in the amended complaint.[2]  In his amended complaint, the plaintiff alleges some of the defendants used excessive force against him and sexually assaulted him while he was incarcerated at LCI and prison officials did not respond appropriately to his grievances.[3]

The plaintiff alleges that on July 30, 2007, the defendant Sgt. Cooper escorted him to the defendant Bruce Oberman's office so that he could meet with an "investigator from

---

[2]The plaintiff recently changed his address and represented to the court that he was released from prison on April 1, 2009.  (Dkt. # 123.)

[3]After filing the present action, the plaintiff filed another action regarding the same claims and adding additional defendants, (Civil Action No.8:08-2859-PMD-BHH.)   This subsequent case was consolidated with the present case and filed as attachment # 4 to the original complaint by an order filed September 4, 2008. (Dkt. # 74.)  Then, on September 10, 2008, the plaintiff's motion to amend his complaint (dkt. # 37), which had been filed on June 25, 2008, was granted.  (Dkt. # 86.)  Therefore, the complaints governing this action are the ones filed as Attachment # 4 to the original complaint and the amended complaint (dkt. # 87).

2

headquarters." (Am. Compl. at 3.)[4] The plaintiff alleges he told the investigator about being starved and assaulted by LCI employees. (*Id.*) He alleges Sgt. Cooper eavesdropped on his conversation with the investigator, and when Sgt. Cooper escorted him back to his cell, he punched the plaintiff in the face and told him he had lied to the investigator. (Am. Compl. at 3-4.) He then alleges that the defendants Sgt. Lloyd, Lt. J. Goodman, and Officer Brailsford joined in escorting him back to his cell. (Am. Compl. at 4.) He alleges that when they arrived at his cell, these defendants went into the cell with the plaintiff and closed the door, and began beating him. (*Id.*) He alleges he begged them to stop and each of these defendants then "forced [him] to suck their penis." (*Id.*) He alleges he refused at first, but they started to beat him, so he complied. (*Id.*) He then alleges that these defendants held him down while Sgt. Cooper raped him. (Am. Compl. at 4.) He alleges after the sexual assault, he was let out of his cell. (*Id.*) He further alleges he was denied medical treatment afterwards by the defendants Sgt. Lloyd, Lt. Goodman, and Officer Brailsford. (Am. Compl. at 6.)

He alleges that prior to the incident, he had submitted several requests to the defendants Warden Padula and Jon Ozmint about Sgt. Cooper's unlawful conduct towards him and they failed to take any action. (Am. Compl. at 6.) Specifically, he alleges the defendants Padula and Ozmint refused to transfer him, or separate him from Sgt. Goodman, despite these requests. (Am. Compl. at 7.) He contends that they are "guilty

---

[4]Oberman is an administrator at LCI in the Special Management Unit. The investigator was the defendant Greer.

3

of deliberate indifference and respondeat superior, aiding and abetting rape and assault."

(*Id.*)

He alleges that as a result of the sexual assaults, he has suffered "unnecessary and wanton infliction of pain, emotional anguish, throat pain, anus pain and stomach pain" (Am. Compl. at 6) and "embarrassment and humiliation." (Am. Compl. at 7). The plaintiff seeks $500,000.00 in actual damages and $1,000,000 in punitive damages, nominal damages, "lost and expenses," and that "all responsible officials be terminated . . . ." (Am. Compl. at 5.)

Further, the plaintiff alleges that on August 31, 2007, Sgt. Cooper went to his cell door and told him there was someone up front who wanted to talk to the plaintiff and that the plaintiff needed to put his hands through the flap. (Dkt. # 1 Attach. #4 - Compl. from C/A # 08-2859 at 4.) The plaintiff alleges he put his left arm through the flap and Sgt. Cooper slammed his arm in the flap. (*Id.*) The plaintiff alleges this was cruel and unusual punishment and Sgt. Cooper was retaliating "because [he] told everyone [Sgt. Cooper] raped [him] July 30, 2007 on Lee C.I. Lockup." (*Id.*) The plaintiff is seeking, inter alia, actual and punitive damages and "for all responsible officials to be terminated from S.C.D.C. for their participation in the incident." (*Id.* at 5.)[5]

_____

[5]In his complaints, the plaintiff does not allege any substantive claims regarding the incident alleged to have occurred on May 7, 2007, nor does he include any claims relating to a macing incident which occurred on August 5, 2007. The macing incident was raised in a declaration the plaintiff filed. (Dkt. # 63.) Any claims not included in the complaints will not be addressed in this report. However, the undersigned notes that even assuming these allegations were properly pled and are true, these incidents would not support a §1983 claim as the injuries following these incidents were de minimis. (Defs.' Mem. Supp. Summ.

## II. **APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved

for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate

that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to

summary judgment as a matter of law.  As to the first of these determinations, a fact is

deemed "material" if proof of it existence or nonexistence would affect the disposition of the

case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury

might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine

issue has been raised, the court must construe all interferences and ambiguities against

the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S.

654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating

to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-

---

J, Mot. Attach. # 2 -  Pl.'s Med. Records - at 4; Dkt. # 116 Attach. # 2- Pl.'s Med. Records at 1.)

moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### III.  <u>DISCUSSION</u>

### A.  Exhaustion

The defendants contend that the plaintiff did not exhaust his administrative remedies prior to filing this action.  The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle,* 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.  In *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2386, 165 L.Ed.2d 268 (2006), the United States Supreme Court held that the

6

PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id.* (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. *Id.*

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford,* 126 S.Ct. at 2385 (*quoting McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

In order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official

7

Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official has sixty (60) days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983. 42 U.S.C. § 1997e. Further, exhaustion is a prerequisite to suit that must be completed prior to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005).

As stated above, the defendants contend that the plaintiff did not complete the grievance process prior to filing this action. The relevant grievances are Grievances No. 1910-07 and 1971-07. Mary Coleman, the inmate grievance coordinator for the SCDC, states in her affidavit that "[t]he Plaintiff has not exhausted his administrative remedies as these two grievances are still pending. The plaintiff was served with Step 1 Determinations on both of these grievances and he appealed to the Step 2 Level on November 12, 2008. There have been no rulings on these Step 2 filings and responses are due in January of 2009." (Mary Coleman's Aff. at ¶.)

The plaintiff filed Step One grievances on July 30, 2007. (Dkt. #115.) When the plaintiff filed this action on March 3, 2008, the plaintiff had not received a response to his Step One grievances which had been pending for over seven months. It would be unfair to find that the defendants' belated response to the plaintiff's Step One grievance months after the filing of this action (and some fifteen months after the plaintiff filed his Step One

8

grievance) reset the clock so to speak for exhaustion purposes and then dismiss this action based upon the plaintiff's failure to completely exhaust prior to filing.[6] The plaintiff filed this action well after the time had run for a response to his Step One grievance. Thus, the plaintiff should be deemed to have exhausted his remedies. *See Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004)(holding administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)(stating that prison's failure to timely respond renders administrative remedies unavailable). Accordingly, the defendants should not be granted summary judgment based on the plaintiff's failure to exhaust.

### B. Merits

### I. Claims against Defendants Warden Padula, Ozmint, Gibbs, Oberman, and Greer

The plaintiff alleges the defendants Warden Padula, Ozmint, Gibbs, Oberman, and Greer violated his constitutional rights by failing to prevent the alleged sexual assault. Basically, the plaintiff alleges that these defendants as supervisors are liable for the alleged sexual assault. (Compl. Attach. # 4 at 3.)[7] He further alleges the defendant Greer, an investigator, did not do his job to make sure the assault did not take place. (*Id.*) He also

---

[6]The undersigned notes that this action can be distinguished from the one in *Kennedy v. Nunnaly*, 2009 WL 778708 (D.S.C. 2009). In *Kennedy*, the plaintiff filed an action against the defendants on January 18, 2008, only weeks after filing his grievance on December 7, 2007.

[7]The plaintiff also alleges the defendant Lt. Goodman took part in the sexual assault on July 31, 2007, and the retaliation on August 31, 2007. (Compl. Attach # 4 at 4.)

alleges in his response to the defendants' motion for summary judgment that the defendants Ozmint, Oberman, and Padula are responsible because they failed to do anything after they were informed of the alleged rape.  The plaintiff states that these defendants should have had him evaluated by medical personnel to see if he had been raped and treat his injuries.  (Dkt. # 113- Pl.'s Mem. Opp. Summ. J. Mot. ¶¶ 20, 25, 26, 44.) The defendants contend the plaintiff has failed to any § 1983 claims against them.

First, the plaintiff alleges the defendants Ozmint, Oberman, and Padula failed to adequately respond to the his grievances regarding the sexual assault.  However, even if these defendants failed to adequately respond to the plaintiff's grievance, the plaintiff has not stated a constitutional claim. The law is well-settled that there is no constitutional right to a grievance procedure.  *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-138 (1977).  Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action.  *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure").  Thus, the plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed or investigated.  Accordingly, the claims against the defendants Ozmint, Oberman, and Padula of unconstitutional conduct relating to the handling of the plaintiff's grievances alleging a sexual assault should be dismissed.

To the extent that the plaintiff alleges a failure to protect claim against these defendants, the plaintiff has also failed to state a claim. "The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (*citing Helling v. McKinney*, 509 U.S. 25, 31 (1993)). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Farmer*, 511 U.S. at 833.

The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health. . . .' " *Id*. at 843 (*citing Helling v. McKinney*, 509 U.S. at 35). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Id*. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id*. at 836-37.

 Further, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. The test is not whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregarded that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at

11

837. While the objective information known to the official may be used to infer the knowledge he actually had, and to draw inferences about his actual state of mind, those inferences are not conclusive. Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). A prison official's "failure to alleviate a significant risk that he should have perceived but did not" does not amount to the infliction of cruel and unusual punishment. *Id*.

It follows that the plaintiff must allege facts indicating that the defendants actually knew of, but disregarded a serious risk to him, rather than that they should have been aware of possible danger. *Id*. The mere fact that the plaintiff alleged an earlier assault occurred does not establish the requisite deliberate indifference to plaintiff's constitutional rights. The plaintiff has not established that the alleged actions of the defendant Sgt. Cooper in May 2007 constituted excessive force. In Grievance No. 0989-07, the plaintiff alleged that on May 7, 2007, the defendants Sgt. Cooper and Officer Brailsford used excessive force against him while escorting him to him cell. He alleged that his hands were in handcuffs behind his back and they pushed him into his cell and Sgt. Cooper tripped him. He alleges they both then began kicking him in the face, left arm, and ribs. He stated that they caused a bruise on his left arm. He requested that he be shipped to another lock-up unit or the officers be terminated. The plaintiff stated he was seen by medical personnel on May 10, 2007.

Indeed, the plaintiff's medical records show that he was seen by medical personnel on May 10th and it was noted that the plaintiff stated that "[t]he officers slammed [him] down

12

onto the concrete and hurt [his] left arm and wrist." The medical exam revealed that the plaintiff had a large bruise, 10 cm by 6 cm, on his left arm and slight bruising on his left wrist. Even assuming the allegations in the May 2007 grievance were true, the plaintiff did not state a claim for excessive force. There is no evidence in the record that these defendants knew of a substantial risk of serious harm to the plaintiff and consciously disregarded it. At best, there was a pending grievance regarding the alleged use of excessive force by Sgt. Goodman against the plaintiff which may have caused bruises on the plaintiff's arm. Nor has the plaintiff has alleged any facts which suggest that these defendants were aware of any alleged sexual misconduct prior to the alleged sexual assault. Further, there is also no evidence that any restriction regarding Sgt. Cooper and the plaintiff was ever imposed.

As to the defendants Padula and Ozmint, the plaintiff alleges that they were deliberately indifferent in failing to investigate and respond to the written grievances he had filed prior to the alleged sexual assaults. (Am. Compl. 6.) As stated above, the plaintiff cannot state a constitutional claim relating to the failure to respond to a grievance. The plaintiff also alleges these defendants failed to protect him by refusing to transfer him or separate him from Sgt. Cooper. (Am. Compl. 7.) However, given the plaintiff's de minimis injuries from the incident alleged in May 2007 and in the absence of any evidence of prior sexual assaults, the plaintiff has failed to raise a material issue of fact regarding the

defendants' deliberate indifference with respect to the handling of his prior written grievances. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994).[8]

To the extent, that the plaintiff alleges the defendants Gibbs, Oberman, and Greer are liable as under a theory of supervisory liability, the plaintiff has failed to state a claim.[9] Supervisory officials may be held liable for the actions of their subordinates only if the plaintiff can show: (1) that the supervisor had actual or constructive knowledge that subordinates were engaged in conduct that posed "a pervasive and high risk" of constitutional injury; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between the supervisor's inaction and the actual constitutional injury suffered by the plaintiff. *Randall v. Prince George's County, Md.*,

---

[8]To the extent that the plaintiff attempts to allege a claim of deliberate indifference to medical needs against these defendants, the undersigned finds the plaintiff has failed to state such a claim. In order to state a claim for the denial of medical care, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. *Farmer*, 511 U.S. 825. A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *Id.* at 832-35. The plaintiff has failed to allege or show anything more than de minimis injury as a result of any medical indifference. Furthermore, to bring such a claim against nonmedical prison personnel, an inmate must show that such officials were personally involved with the denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). The plaintiff has not alleged any facts which support these non-medical defendants were deliberately indifferent to the plaintiff.

[9]Generally, respondeat superior is inapplicable to § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Accordingly, if the defendants are liable at all it would be under a theory of supervisory liability.

302 F.3d 188, 206 (4th Cir.2002) (*quoting Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.

1994)).  Generally, a plaintiff cannot show supervisory liability based upon a single incident

or isolated incidents. *See Slaken v. Porter*, 737 F.2d 368, 373 (4th Cir.1984). Rather, a

"supervisor's continued inaction in the face of documented widespread abuses" may form

the basis of a claim of deliberate indifference. *Id.*

There is no evidence in the record of "documented widespread abuses," which are

necessary to state a claim based upon supervisor liability. Therefore, the plaintiff has not

alleged facts sufficient to state a claim for supervisor liability against these defendants.

Furthermore, in this case, there is no evidence that a policy or custom caused the

injuries that the plaintiff alleges he sustained as a result of sexual assault. As might be

expected, there is no policy encouraging officers to commit sexual assaults against inmates

or an affirmative custom of allowing such behavior by its officers.  Further, it is undisputed

that  none of Sgt. Cooper's superiors had any knowledge of any alleged prior sexual

contact.  The plaintiff has offered no evidence that the defendants had reason to believe

Sgt. Cooper might commit a sexual assault.  Accordingly, there is no evidence to support

the plaintiff's claim that the defendants condoned any alleged sexual assault.

The undersigned recommends that these defendants' motion for summary judgment

on these claims be granted. *See Davis v. Lester,* 156 F.Supp.2d 588, 597 (W.D.Va.2001)

(finding that supervisory officials cannot be held liable for subordinates' conduct when they

did not have specific notice of any risk of harm to that particular inmate prior to the alleged

15

violation and they had not effectuated or condoned any policy likely to result in the harm alleged).

### ii.    **Assault Claims Against the Defendants Sgt. Cooper, Sgt. Lloyd, Lt. Goodman, and Officer Brailsford**

As stated above, the plaintiff alleges the defendant Sgt. Cooper punched him while escorting him back to his cell. Once in his cell, the plaintiff alleges the defendants Sgt. Cooper, Sgt. Lloyd, Lt. Goodman, and Officer Brailsford beat the plaintiff and forced him to perform oral sex and then Sgt. Cooper raped the plaintiff while the other three defendants held the plaintiff down. (Am. Compl. 4; 6.) The defendants deny the plaintiff's allegations. (Defs.' Mem. Opp. Summ. J. Mot. 9 & Attachs. # 5-8 - Defs.' Affs.)

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A prison guard may violate the Eighth Amendment by sexually harassing or sexual assaulting an inmate. Sexual assault is "not a legitimate part of a prisoner's punishment, and the substantial physical and emotional harm suffered by a victim of such abuse are compensable injuries" under § 1983. *Berryhill v. Schriro*, 137 F .3d 1073, 1076 (8th Cir.1998); *see also Wright v. O'Hara*, 2004 WL 1793018 at *7 (E.D.Pa. Aug. 11, 2004) (agreeing that sexual assault, coercion and harassment are "simply 'not part of the penalty that criminal offenders pay for their offenses against society.' " (*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994))). An inmate has a "constitutional right to be secure in her bodily

16

integrity and free from attack by prison guards." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir.1993) (*citing Alberti v. Klevenhagen*, 790 F.2d 1220, 1224 (5th Cir.1986)). The right to be secure in one's bodily integrity includes the right to be free from sexual abuse. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003).

To be actionable under the Eighth Amendment, the alleged sexual contact must be incompatible with "contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (*citing Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). Sexual assaults against inmates by prison guards without lasting physical injury may be actionable under the Eighth Amendment as acts which are "offensive to human dignity." *Schwenk v. Hartford*, 204 F.3d 1187, 1196-97 (9th Cir. 2000). While not every malevolent touching gives rise to a federal cause of action, *Hudson v. McMillian,* 503 U.S. 1 (1992), in cases of sexual abuse or rape, "the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.' " *Giron v. Corrections Corp. of America*, 191 F.3d 1281, 1290 (10th Cir.1999) (*quoting Whitley*, 475 U.S. at 320-21)).

The facts, taken in the light most favorable to the plaintiff, without a finding as to his credibility, establish that there are genuine issues as to material facts and therefore summary judgment is inappropriate at this time.[10] *See Gray v. Spillman*, 925 F.2d 90, 95

---

[10]Clearly, credibility will be the pivotal in the resolution of this action and after reviewing the record, the undersigned has serious reservations about the truthfulness of the plaintiff's allegations. The plaintiff's medical records show the plaintiff has engaged in a pattern of bizarre behavior often with a manipulative intent. There are numerous notations of the plaintiff eating his own feces and smearing it on walls, injuring himself, threatening

17

(4th Cir.1991) (finding that where resolution of an issue of fact depends upon credibility determination, summary judgment is not appropriate).   When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. *Davis v. Zahradnick,* 600 F.2d 458 (4th Cir.1979).   As these defendants are not entitled to judgment as a matter of law, their summary judgment motion should be denied.

### iii.  Retaliation/Excessive Force Claim against the Defendant Sgt. Goodman

The plaintiff alleges that on September 1, 2007, the defendant Sgt. Goodman slammed his arm in the flap on his cell door in retaliation for the plaintiff filing a grievance alleging that Sgt. Goodman assaulted him on July 30, 2007.   For an inmate to state a colorable claim of retaliation under § 1983, the allegedly retaliatory action must have been taken to deter the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right.  *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994). Retaliation against an inmate for the exercise of a constitutionally protected right states a § 1983 claim.  *ACLU v. Wicomico County*, 999 F.2d 780 (4th Cir.1993); *Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir.1978).  However, the inmate must allege sufficient facts which tend to support his allegation of a retaliation motive behind defendants' actions. *White v. White*, 886 F.2d 721 (4th Cir.1989).  Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory'

---

to injure others, and complaining of being the victim of sexual assaults.  The plaintiff has reported seeing "little green men" and hearing voices.  After reporting these hallucinations, the plaintiff would recant and admit that he only did so in an attempt to get something that he wanted, typically a transfer.

18

in the sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir.1994). To succeed on his claim, an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams*, 40 F.3d at 75. The inmate must come forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993). Bare assertions of retaliation do not establish a claim of constitutional dimensions. *Adams,* 40 F3d. at 74. Thus, complaints that offer nothing more than conclusory allegations of retaliation may be summarily dismissed. *Id*. at 72.[11]

It is well established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state an excessive force claim, an inmate must show: (1) that the correctional officers acted with a sufficiently culpable state of mind, and (2) that the harm inflicted on the inmate was sufficiently

---

[11]It also appears that the plaintiff's claim of retaliation has not been fully exhausted and could be dismissed on that basis.

serious. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Absent the most extraordinary circumstances, an inmate must provide proof of more than de minimis injury. *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994). " De minimis injury can serve as conclusive evidence that de minimis force was used." *Riley v. Dorton*, 115 F.3d 1159, 1168 (4th Cir. 1997). *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998) (holding that abrasions on the plaintiff's wrists and ankles and tenderness over the plaintiff's ribs were de minimis ).

Additionally, the PLRA provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering).

Under these principles, the plaintiff's allegations fail to state any claim of retaliation. The plaintiff has neither alleged facts to show that the actions of defendant Sgt. Goodman were taken "in response to" plaintiff's exercise of a constitutional right, nor has he claimed or presented any facts to suggest that the actions of the defendant Goodman violated a constitutional right. In filing grievances, the plaintiff was not exercising a constitutional

20

right. *Adams,* 40 F.3d at 74.[12]    Additionally, other than the bruising noted in his medical records, the plaintiff has not established anything other than a de minimis injury. Therefore, the plaintiff has failed to establish an excessive force claim.    Furthermore, other than bare assertions of retaliation, the plaintiff has not offered any evidence  to establish a retaliatory motive against Sgt. Goodman.    Accordingly, the plaintiff's retaliation claims should be dismissed.

## IV.  CONCLUSION

Wherefore, based on the foregoing, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 109) be GRANTED in part and DENIED in part.  The Defendants Padula, Ozmint, Gibbs, Oberman, and Greer should be granted summary judgment and dismissed.  Further, the defendant Cooper should be granted summary judgment on the retaliation claim.  The Defendants Cooper, Lloyd, Goodman, and Brailsford should be denied summary judgment on the remaining claim relating to the assault alleged to have occurred on July 30, 2007.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

May 20, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

---

[12]The fact that a plaintiff must exhaust his administrative remedies by filing a grievance before filing a law suit also does not create a constitutional right.  *Morris v. Haynes,* 2007 WL 951848 * 4 (N.D.W.Va. 2007)("While § 1997e(a) requires an inmate to exhaust his or her administrative remedies before bringing an action for a violation of a constitutional right in federal court, the statute does not itself create a constitutional right.").

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).